Jessy Michael DENNIS, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 97–127.

Supreme Court of Wyoming.

June 26, 1998.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos (argued), Appellate Counsel, for Appellant (Defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; Sean T. Counce (argued), Student Intern, Prosecution Assistance Program, for Appellee (Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Following a jury trial, Appellant Jessy Michael Dennis was convicted on one count of indecent liberties with a minor for his sexual relationship with a sixteen-year old girl. He appeals that judgment, claiming discovery rule violations, an improper closing argument, and ineffective assistance of counsel require reversal of his conviction.

We affirm.

### ISSUES

Dennis presents these issues for our review:

I. Was the Appellant denied a fair trial when the State failed to disclose all statements made by the Appellant and then violated the court's order prohibiting the use of the statement during closing argument?

II. Was the Appellant denied a fair trial as guaranteed by the due process clauses of the United States and Wyoming Constitutions because of prosecutorial misconduct during the closing argument?

III. Was Dennis denied effective assistance of counsel as guaranteed by the

Sixth Amendment of the United States Constitution and Article I Section 10 of the Wyoming Constitution?

The State rephrases the issues as:

I. Did the prosecuting attorney improperly fail to disclose to appellant the substance of appellant's oral statement made to police officers, or improperly refer in closing argument to the fact that appellant had described himself as a "player"?

II. Did the prosecuting attorney commit misconduct in his closing argument?

III. Was appellant denied effective assistance of counsel at trial?

## FACTS

In the fall of 1995, RS was a sixteen year old high school student at Campbell County High School and had recently been placed on juvenile probation. In October of 1995, she was befriended by Dennis, age twenty-one, and visited him several times in his apartment. His apartment was frequented by many young girls, including KM, SH, LR, MC, and HC. Most were high school juniors and 15 or 16 years old. KM was a sophomore whom Dennis dated and asked to be his girlfriend. HC was in the eighth grade. Sometime during October, a sexual relationship began between Dennis and RS, usually conducted in Dennis' apartment. RS told Dennis that she was 16 and a junior at the high school and that she was on juvenile probation. Dennis told RS not to tell her probation officer, or her father, or the police that he was dating her, stating that he could be sent to prison.

In the middle of November, RS went on a ski trip with Dennis and a friend. The friend testified that on the way to the ski area, the matter of RS' age came up in "some kind of guessing deal." During the conversation, he learned RS was a senior and was 18. At the ski resort, RS signed a ski rental slip on which she stated that she was eighteen years old. RS testified that she had put down that age at the direction of Dennis because otherwise a parent would have to sign for her to rent skis.

At the end of November, Dennis and RS temporarily ended their sexual relationship

but resumed it a few days later. It ended permanently in December of 1995. In January of 1996, RS' probation was revoked for skipping school, and she was sent to the Girls' School. During a medical examination at the school, it was discovered that RS was six to eight weeks pregnant. The pregnancy was terminated soon afterwards.

In October of 1996, the Gillette Police Department began an investigation of Dennis' relationship with RS. The police recorded two phone calls placed by RS to Dennis who, at that time, was imprisoned at the Community Alternative Center. The tape recording included many statements by Dennis about his present incarceration, past bad acts, and admissions concerning his knowledge of RS' age. During an interview with police, Dennis admitted to a sexual relationship with RS before Thanksgiving but claimed he ended the relationship when he learned that she was sixteen years old. He could not recall any sexual intercourse after that. According to the notes of a police officer, Dennis stated during the interview that he did not really care about the ages of the girls he associated with because he was a "player."

Dennis was charged with two counts of taking immodest, immoral or indecent liberties with a child. The first count charged that crime occurred from October 22, 1995, through November 11, 1995, and the second count alleged the dates of November 12, 1995, through December 9, 1995. Dennis filed a demand for discovery and was tried by jury. He was found not guilty of the first count but was found guilty of the second count and sentenced to five to nine years. This appeal followed.

## DISCUSSION

Dennis first argues he was unconstitutionally denied a fair trial when an undisclosed statement to a police officer became the theme of the State's prosecution against him. Upon Dennis' motion for a mistrial, the district court denied the motion but issued directions to the prosecutor. Dennis claims that the prosecutor violated this court order.

Before trial, the district court issued an order directing the State to disclose evidence

to Dennis under Wyo. R.Crim. P. 16, which states in pertinent part:

(a) *Disclosure of evidence by state.*

(1) Information Subject to Disclosure.

(A) Statement of Defendant.

(i) Upon written demand of a defendant the state shall permit the defendant to inspect and copy or photograph:

1. Any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the state;

2. The substance of any oral statement which the state intends to offer in evidence at the trial made by the defendant whether before or after arrest;

\* \* \* \*

(2) Information Not Subject to Disclosure.—Except as provided in subparagraphs (1)(A), (1)(B) and (1)(D), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal state documents made by the attorney for the state or other state agents in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses except as provided in Rule 26.2.

\* \* \* \*

(c) *Continuing duty to disclose.*

\* \* \* \*

(2) Failure to Comply.—If at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

At trial, the prosecutor repeatedly referred to Dennis' statement during a police interview that he did not really care about the ages of the girls he associated with because he was a "player." The prosecution elicited details of this statement from the police officer. Cross-examination revealed that the police officer had made notes of the statement and had disclosed that Dennis stated he did not care about the ages of the girls but the officer had not included the word "player" in the report disclosed to the defense. The defense moved for a mistrial. The State argued that the word "player" was insignificant. The district court ruled that despite the omission of the one word "player," the State had disclosed the substance of Dennis' oral statement, and a mistrial should not be granted, but did direct the prosecution "not to emphasize player" in closing arguments and future questioning. During closing arguments, the prosecutor stated to the jury:

You heard the testimony of Detective Lipka on direct and cross-examination. What Detective Lipka said was the defendant told him that the defendant was a player; that he wasn't really concerned about the ages of the girls that he associated with.

And [defense counsel] then asked Detective Roberts. Well, you didn't ask the defendant how he defined that. You didn't get a definition of that.

And Detective Roberts said, Well, no, no, I didn't. From the context of how that was spoken, I was very sure of what the defendant was telling me. What he said was he interpreted that as the defendant was preying on minor female victims.

■■■ Because the defense did not make proper objections, the parties agree that our standard of review is plain error requiring a clear record of the alleged error and demonstrations that the error violated a clear and unequivocal rule of law and denied Dennis a substantial right resulting in material prejudice. *Johnson v. State,* 936 P.2d 458, 465 (Wyo.1997). The record clearly sets out the alleged error; however, we must agree with the State that the omission does not violate Rule 16. This particular statement falls under Rule 16(a)(1)(A)(i)(2), and the omission of

the word "player" is not a vital or an integral part of the substance of defendant's oral statement to the police. The district court correctly ruled that the State had disclosed the substance of the oral statement. Rule 16(a)(2) does not require disclosure of the officer's notes. Nor do we find that the prosecution violated the court order regarding future references to the word "player." The prosecutor was directed not to emphasize the word, but was not prohibited from referring to it. Under these court directions, the prosecution was permitted to reference it during closing argument. *See Lindsey v. State,* 725 P.2d 649, 655 (Wyo.1986).

Next, Dennis contends that, during closing argument, the prosecutor improperly used evidence of other wrong acts, and asked the jury to consider facts not in evidence, and this prosecutorial misconduct denied him a fair trial. There were no objections from defense counsel to the improper closing argument, and the plain error standard applies. *Prindle v. State,* 945 P.2d 1180, 1184 (Wyo. 1997).

> In presenting a closing argument, the prosecutor is entitled to reflect upon the evidence and to draw reasonable inferences from that evidence in order to assist the jury in its function. . . . The purpose of closing argument is to give both the prosecution and defense counsel the opportunity to explain the significance of the evidence and how it should be viewed. . . . Finally, we have previously said that the scope of permissible argument, as well as the injury caused by misconduct, are best determined by the trial judge.

*Prindle,* 945 P.2d. at 1184–85.

■ "Counsel are allowed wide latitude in the scope of their argument. In the course of our review, we consider the entire closing argument and do not take individual sentences or phrases out of context. We also consider the closing argument in the context of the entire trial record." *Vargas–Rocha v. State,* 891 P.2d 763, 771 (Wyo.1995) (citations omitted).

■ Dennis tells us that he is not complaining about the admission of WYO. R. EVID. 404(b) evidence, but rather the use of the evidence in closing arguments. Both parties agree that the issue in this case was whether Dennis knew RS was sixteen. During closing argument, the prosecutor submitted that Dennis knew RS was sixteen because she told him she was and because he pursued other young girls that he knew were minors. The prosecution also concluded that "history repeats itself" by directing the jury's attention to the taped telephone conversation and characterizing some of Dennis' statements as an attempt to renew his relationship with RS, although he was by then fully aware she was underage. Dennis claims there was no evidence presented that he knew the age of these other girls or RS and the prosecutor misled the jury. We agree with the State that, in closing, the prosecutor argued that the evidence of Dennis' relationship with KM and his relationship with RS, together with evidence that Dennis' apartment was frequented by underage girls who were schoolmates of KM and RS, supported the conclusion that Dennis knew that RS was under 18 years of age at the time he had sexual intercourse with her. This was a fair characterization of the evidence presented at trial, and we find no prosecutorial misconduct.

The State does concede that the prosecutor's statement that Dennis knew that CH's age was 17 was wrong. Dennis claims that the split verdict in this case indicates it was a very close case, and this inaccuracy and the statements discussed above materially prejudiced him and require reversal. We do not believe that this one error resulted in the guilty verdict. Considering the closing argument in its entirety, as we must, there was substantial evidence that Dennis knew RS' age sometime in November. Dennis cannot make the required showing of prejudice caused by the inaccuracy.

■ Finally, Dennis argues that he was deprived of his right to have effective assistance of counsel because his trial counsel did not move to suppress or redact those portions of the tape recording of Dennis' October 17,1996, telephone conversation with RS which related to his prior convictions and bad acts and because his trial counsel failed to object to the State's closing argument and to the evidence of uncharged misconduct. Den-

nis is required to show that his counsel's performance was defective and that the deficient performance prejudiced his defense in order to prevail on this claim. *Dudley v. State,* 951 P.2d 1176, 1181 (Wyo.1998).

The tape recording revealed that Dennis took the telephone call in prison and made repeated references about prior convictions for indecent liberties, joyriding, and aggravated assault. He and RS discussed her abortion. The State points out that mixed in with these statements are admissible, relevant statements by Dennis acknowledging his sexual relationship with RS. At the close of the trial, the jurors wanted to have a tape player so they could hear the tape, but defense counsel objected to allowing the jury to review the tape. Counsel noted that he had listened to the tape before trial and concluded it would not be possible to excise parts of the tape, and therefore, hoped to minimize its effect through argument to the jury. The district court responded that while it was surprised that many inadmissible statements had come in,

> maybe you decided that it would inevitably come in because, as you mention, redacting it repeatedly from the testimony of witnesses and from the tape-recording, and that's going to leave big gaps for the jury to try to figure out, What are they trying to hide from us?

This area of the law is well-settled. If the failure to move to suppress is a trial tactic or strategy, it will not, in hindsight, be judged as unconstitutionally ineffective assistance of counsel. *Dudley,* 951 P.2d at 1181. There was no error.

### CONCLUSION

The judgment on the conviction is affirmed.