Cheryl DURAN, Petitioner (Defendant),

v.

The STATE of Wyoming, Respondent (Plaintiff).

No. 97–302.

Supreme Court of Wyoming.

Nov. 19, 1999.

Representing Petitioner: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Karl Linde, Assistant Appellate Counsel. Argument by Ms. Domonkos.

Representing Respondent: William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, and Rachel G. Hodson, Student Intern, of the Prosecution Assistance Program. Argument by Ms. Hodson.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

GOLDEN, Justice.

This is a review by writ of certiorari[1] in which Petitioner Cheryl Duran appeals from the conviction and sentence entered against her for aggravated vehicular homicide. Duran challenges the trial court's refusal of battered woman syndrome expert testimony and self-defense instructions and the admission of evidence of the victim's peaceful character. On this issue of first impression, we hold that because Duran was charged with a crime involving a reckless act, rather than an intentional act, the affirmative defense of self-defense is not available to her. It necessarily follows that because battered woman syndrome is used to explain elements of self-defense, the statute which allows testimony concerning the syndrome in cases involving self-defense is not relevant to this case. Finally, the district court's decision to allow testimony concerning the victim's peaceful character was not an abuse of discretion. Finding no error in the district court's rulings concerning instructions or testimony presented to the jury, we affirm.

## ISSUES

Petitioner Duran presents four issues for our review:

I. Whether the district court committed reversible error when it refused Appel-lant's instructions on her theory of self-defense?

II. Whether the district court erred in refusing expert testimony on battered woman syndrome?

III. Whether Appellant was denied effective assistance of counsel because counsel failed to give notice of intent to introduce expert testimony on battered woman syndrome?

IV. Whether the trial court erred by admitting evidence about the victim's character for peacefulness before Appellant showed the victim was the first aggressor?

The State, as Respondent, addresses three issues in its brief:

I. Did the district court err in refusing to instruct the jury on self-defense?

II. Did the district court err in not permitting petitioner to introduce evidence on the battered woman syndrome?

III. Did the district court err in overruling Petitioner's objections to testimony relating to the conduct of the victim?

## FACTS

Duran and the victim lived together in Duran's apartment. On the evening of January 3, 1996, they drove to several local drinking establishments together and ordered drinks at each establishment. At some point in the early morning hours of January 4, 1996, they began to argue. Duran left the establishment and walked to her car, and the victim followed her. Duran testified the victim got upset when she started to get into the car, so she offered to walk home, but he rejected the offer and pushed her into the car, causing her to hit her head.

When the victim moved away from the car door, Duran slammed and locked the doors, but the victim grabbed a partially opened window and tried to get into the car. Duran testified that she was afraid because the victim had never acted that way before, and

* Chief Justice at time of oral argument; retired November 2, 1998.

1. In response to the State's motion to dismiss Duran's appeal as untimely, this Court granted that motion "to the extent that the notice of appeal shall be treated as a petition for writ of certiorari...."

she thought he might hit her or throw her down again. She jumped into the driver's seat and started the car. When Duran drove off, the victim was on the hood of the car. Duran did not know how the victim got onto the hood of the car, but denied hitting him. Duran made several driving maneuvers to dislodge the victim from the car and was finally successful. Apparently, the windshield wiper that the victim was gripping broke off the car. When the victim fell off the car, he hit his head on the pavement.

Duran continued driving, then returned to the scene after a short while and attempted to convince the victim to get up. The victim was unconscious in the roadway and could not comply. Officer Fife arrived on the scene and questioned Duran. She told him that she had an argument with the victim, and when she drove away, the victim ran alongside the car for seven or eight blocks, then jumped onto the hood of the car. She said she slammed on her brakes, and the victim fell off the hood. The victim suffered injuries to his brain consistent with striking his head on a hard surface. The brain injuries proved fatal. The victim died on January 5, 1996.

On March 29, 1996, the State filed an information charging Duran with one count of aggravated homicide by motor vehicle, in violation of Wyo. Stat. Ann. § 6–2–106(b)(ii). The information alleged that Duran drove a motor vehicle in a reckless manner and proximately caused the death of the victim.

When the case came to trial on October 14, 1996, the trial court heard argument on two preliminary matters. The trial court ruled that Duran would not be permitted to present expert testimony on battered woman syndrome and denied Duran's motion in limine to exclude character evidence of the victim's character trait for peacefulness. The trial court also refused to give self-defense instructions proffered by Duran. The jury found Duran guilty of aggravated vehicular homicide on October 17, 1996. This Court entered an order allowing Duran to proceed with her appeal upon a writ of certiorari.

## DISCUSSION

### Standard of Review

Duran claims the trial court erred as a matter of law when it refused to give her theory-of-the-case self-defense instructions. "With regard to theory-of-the-case instructions, we have stated that a defendant is denied his due process of law right if the trial court fails to give a jury instruction on the defendant's theory of the case when the instruction properly recites Wyoming law and competent evidence has been presented to support the defendant's theory." *Harris v. State*, 933 P.2d 1114, 1126 (Wyo.1997).

A trial court has a duty to instruct the jury on the general principles of law applicable to the case before it. *Brett v. State*, 961 P.2d 385, 389 (Wyo.1998). "A trial court is given wide latitude in instructing the jury, and we will not find reversible error as long as the instructions given to the jury correctly state the law and adequately cover the relevant issues." *Id.* (citing *Baier v. State*, 891 P.2d 754, 756 (Wyo.1995)). Jury instructions inform the jury about the applicable law so that the jury may apply that law to its factual findings. *Id.* This case presents an issue of first impression in Wyoming concerning whether the affirmative defense of self-defense is available to a defendant charged with a reckless act. As such, the district court's ruling involves a question of law, which we review *de novo*.

Duran also claims the trial court erred when it allowed the State to present evidence concerning the victim's peaceful character during its case in chief, thereby violating W.R.E. 404(a)(2), which allows such testimony on rebuttal. Evidentiary rulings by the trial court are reviewed on appeal pursuant to an abuse of discretion standard. *Vit v. State*, 909 P.2d 953, 956–57 (Wyo.1996). Judicial discretion means a sound judgment exercised with regard to what is right under the circumstances, without doing so arbitrarily or capriciously. *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998).

### Self–Defense [2] and Reckless [3] Conduct

Duran was charged with, and convicted of, aggravated homicide by vehicle. The crimi-

---

**2.** We have said the following of self-defense:

The law of self-defense finds its foundation

nal statute, Wyo. Stat. Ann. § 6–2–106(b)(ii) (LEXIS 1999), provides:

> (b) A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if:
>
> * * *
>
> (ii) He operates or drives a vehicle in a reckless manner, and his conduct is the proximate cause of the death of another person.

The trial court refused to instruct the jury on self-defense, explaining:

> The reason is that it appears to me that the evidence does not warrant a self-defense instruction because as I understand the Defendant's testimony she intended at no time to inflict any injury and certainly not death on [the victim], rather that she was simply trying to avoid further confrontation with him.
>
> * * *
>
> So that she does not claim that she ever acted intentionally to inflict any harm on him, rather any harm to him was incidental and accidental in her point of view. So it's the view of the Court that the self-defense being an affirmative defense and this Defendant, having in her testimony denied any such act on her part, inflict injury on [the victim], self-defense is not an available defense.

■ This Court has not directly considered whether self-defense is an appropriate affirmative defense to a crime involving recklessness rather than an intentional act. Duran argues that *Small v. State*, 689 P.2d 420 (Wyo.1984), *cert. denied*, 469 U.S. 1224, 105 S.Ct. 1215, 84 L.Ed.2d 356 (1985), implied that self-defense is an appropriate defense to criminal recklessness. In *Small*, the defendant was charged with involuntary manslaughter. *Small*, 689 P.2d at 422. "Out of an abundance of caution, the trial court gave

eight instructions on self-defense." *Id.* Contrary to Duran's contention, the court did not imply that the self-defense instructions were necessary. *Id.*

The trial court also instructed the jury that one of the necessary elements of involuntary manslaughter was that "the defendant acted recklessly." In another instruction the court defined "recklessly." The state proved to the satisfaction of the jury that appellant acted recklessly. The same evidence that proved appellant acted recklessly also proved that appellant did not act in self-defense since proof of recklessness under the facts of this case negates self-defense. A finding of recklessness is inconsistent with, and precludes a finding of, self-defense.

*Id. Small* continued its analysis, quoting a case from our sister court in the State of Washington with approval:

> When recklessness is an element of the crime charged, and the court properly instructs the jury on the elements of recklessness, the jury must determine, before it may convict, that the accused knew of and disregarded a substantial risk that a wrongful act would occur and that such disregard was a gross deviation from the conduct of a reasonable person in the same situation. Such a finding is totally inconsistent with self-defense. A person acting in self-defense cannot be acting recklessly. Thus, if the jury is able to find that a defendant acted recklessly, it has already precluded a finding of self-defense.

*Id.* (quoting *State v. Hanton*, 94 Wash.2d 129, 614 P.2d 1280, 1282 (1980)).

In *Small*, this Court opined that "henceforth, when self-defense is properly raised the jury should be specifically instructed that the state has the burden to prove absence of self-defense beyond a reasonable doubt." *Small*, 689 P.2d at 423. However, based on

---

in the concept of necessity. The right to defend oneself, and the amount and type of force used, is relative to what is **reasonably necessary** under the circumstances.
*Baier v. State*, 891 P.2d 754, 758 (Wyo.1995) (citations omitted, emphasis added).

**3.** Wyo. Stat. Ann. § 6–1–104(a)(ix) (LEXIS 1999) defines "recklessly" as the following conduct:

A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

the *Hanton* analysis, we determined that, although the trial court failed to instruct the jury that the state has the burden to prove the absence of self-defense beyond a reasonable doubt, the error was not reversible error. *Small*, 689 P.2d at 423. *Small* held that "the instructions, taken as a whole, adequately informed the jury of the state's burden of proof, including the negation of appellant's assertion of self-defense." *Id.* at 423–24.

Rather than implying that self-defense is a proper defense to criminal recklessness, *Small* implies that the self-defense instructions were not necessary because a finding of recklessness precludes a finding of self-defense. If *Small* had determined that the self-defense instructions were necessary, it would have found reversible error for "failure to specifically instruct that the state has the burden to prove absence of self-defense beyond a reasonable doubt." *Id.* at 423. *See also Olson v. State*, 960 P.2d 1019, 1021 (Wyo.1998) (Instruction failed to assign to the State the burden of negating self-defense beyond a reasonable doubt as *Small* requires. Court also recognized that *Small* was "critical of self-defense for involuntary manslaughter," but did not decide the appeal on that basis.)

█ While Duran claims that the more persuasive approach finds self-defense is relevant to the "reckless" element of the offense, this Court is inclined to follow "[t]he majority of jurisdictions hold[ing] that self-defense requires intentional conduct." *See State v. Blanks*, 313 N.J.Super. 55, 712 A.2d 698, 703 (1998) and cases cited therein. A charge of recklessness involves an unintentional act. *State v. Miller*, 981 S.W.2d 623, 632 (Mo.App.1998). The trial court gave proper instructions to the jury on the elements of the offense and the definitions of "recklessness" and "proximate cause." The jury had the applicable law before it. The trial court did not err in refusing to submit an instruction on self-defense to the jury.

*Battered Woman Syndrome*

█ In a related issue, Duran argues that the trial court erred when it refused to admit expert testimony concerning battered woman syndrome. The State objected to the testimony on two grounds: First, testimony concerning battered woman syndrome must be in connection with a theory of self-defense; second, Duran did not provide notice of the defense pursuant to W.R.Cr.P. 12.2. The trial court sustained the objections on both grounds, and Duran was allowed to present an offer of proof at the end of the presentation of evidence.

Wyo. Stat. Ann. § 6–1–203 (LEXIS 1999) is the Wyoming legislature's response to recognition of battered woman syndrome:

(a) The "battered woman syndrome" is defined as a subset under the diagnosis of Post–Traumatic Stress Disorder established in the Diagnostic and Statistical Manual of Mental Disorders III—Revised of the American Psychiatric Association.

(b) If a person is charged with a crime involving the use of force against another, and the person raises the affirmative defense of self-defense, the person may introduce expert testimony that the person suffered from the syndrome, to establish the necessary requisite belief of an imminent danger of death or great bodily harm as an element of the affirmative defense, to justify the person's use of force.

The battered woman syndrome statute "does not create a separate defense; it permits the introduction of expert testimony on the battered woman syndrome when the affirmative defense of self-defense is raised." *Witt v. State*, 892 P.2d 132, 143 (Wyo.1995). In the absence of the affirmative defense of self-defense, Wyo. Stat. Ann. § 6–1–203 is not relevant here. Once the trial court determined that self-defense was not an appropriate defense in this case, and this Court agrees with that determination, reliance on the statute was misplaced. "[I]n the absence of statutory authority mandating admission of the expert testimony, the district court's decision to admit or reject such testimony is an evidentiary ruling committed to its discretion." *Witt*, 892 P.2d at 137 (citing *Price v. State*, 807 P.2d 909, 913 (Wyo.1991)). We do not disturb a trial court's evidentiary ruling absent a clear abuse of discretion. *Id.*

Duran's offer of proof summarized the expert's proposed testimony as follows:

> She would have testified that she has since approximately October of 1995 counseled the Defendant as to her past experiences with men in her life that have been abusive, both psychologically and physically.

> [The expert] would have testified that she was familiar with the Defendant's medical background, including incidents of rape, physical abuse, of beating, at least one beating that resulted in being hospitalized for three days, and psychological abuse by and through the Defendant's ex-husband. And that such abuse and background of the Defendant and her expert opinion would have—would give rise to an opinion that the Defendant suffered from the battered woman syndrome.

> And as a result **would have affected the—what the Defendant would have perceived to be in eminent [sic] danger of death or bodily harm at the hands of the victim in this case and that it was reasonable for her to believe that she was in danger.** That would be what [the expert] in sum and substance would have testified to.

(emphasis added.) In *Witt*, we held that Wyo. Stat. Ann. § 6–1–203 "does not permit expert testimony on the ultimate issue of the accused's state of mind at the time the crime was committed." *Witt*, 892 P.2d at 138. Given Duran's summary of the expert's proposed testimony, it appears the testimony was going to be used to establish that Duran acted reasonably on the night of the incident.

> Testimony on the accused's state of mind at the time of the violent act, however, would not be helpful to the jury. An expert has no basis for evaluating the accused's state of mind when she committed the crime, and such testimony would usurp the function of the jury. Testimony on the accused's state of mind at the time of the crime would constitute an opinion on the accused's credibility and guilt because it would be a comment upon what the accused actually believed.

*Id.* The district court did not abuse its discretion in excluding the battered woman syndrome testimony.

*Ineffective Assistance of Counsel*

■ Duran claims she received ineffective assistance of counsel because counsel failed to provide notice of his intent to present battered woman syndrome testimony in accordance with W.R.Cr.P. Rule 12.2. Although the trial court used the failure to provide notice as one of its bases for disallowing the testimony, it also relied on the inapplicability of Wyo. Stat. Ann. § 6–1–203 in cases where self-defense is not an affirmative defense to the crime. Counsel's failure to provide notice pursuant to Rule 12.2 could not prejudice Duran, because the evidence would not have been permitted even if notice had been provided. Therefore, Duran "has not shown the prejudice necessary for an ineffective assistance of counsel claim." *Barela v. State*, 936 P.2d 66, 69 (Wyo.1997) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

*Rule 404(a)(2) Testimony*

■ Before trial, Duran filed a motion in limine to exclude the admission of character evidence about the victim, based on W.R.E. 404. After jury selection, the trial court heard argument on that motion. The trial court determined that the testimony was admissible pursuant to Rule 404(a)(2) as rebuttal evidence that the victim was the first aggressor. Counsel for the State explained which witnesses would testify and what their testimony would entail.

Wyoming Rule of Evidence 404(a)(2) provides:

> (a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
> * * *
> (2) Character of Victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peace-

fulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]

The witnesses testified during the State's case in chief, rather than as rebuttal witnesses. On appeal, Duran complains that Rule 404 was violated because the testimony was not presented as rebuttal testimony. The State contends that the testimony was not character evidence and, therefore, Rule 404 is not implicated. We find that contention without merit. The trial court correctly determined that the testimony was Rule 404(a)(2) testimony.

Therefore, the question before us is whether the trial court abused its discretion when the testimony was presented during the State's case in chief, rather than as rebuttal testimony. During argument concerning Duran's motion in limine on the character evidence, the State told the trial court and defense counsel how the evidence would be presented. The State then called the witnesses and elicited testimony during its case in chief. The trial court has discretion over the order of trial proceedings pursuant to W.R.E. 611. That rule provides:

> (a) *Control by Court.*—The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

W.R.E. 611.

"[T]he trial court's determination to permit witnesses to testify out of order is a discretionary matter with the court, and should not be disturbed on appeal, unless it can be clearly shown that the trial court abused its discretion." *Shaffer v. State*, 640 P.2d 88, 101 (Wyo.1982). Although Rule 404(a)(2) allows the character testimony at issue here as rebuttal testimony, we cannot say that the trial court exceeded the bounds of reason when it allowed the witnesses to testify concerning the victim's peaceful character while they were describing the relationship between Duran and the victim, rather than

recalling them to the witness stand after the defense put on its case. Duran made it clear in her argument on the motion in limine and in opening statements that she intended to portray the victim as the first aggressor to explain her conduct. *Cf. Brown v. State*, 953 P.2d 1170, 1177 (Wyo.1998). The issue being thus inserted into the case, it was not an abuse of discretion for the trial court to allow the testimony during the State's case in chief.

## CONCLUSION

The trial court correctly determined that self-defense is not a defense to criminally reckless conduct in Wyoming. Therefore, the statute permitting battered woman syndrome testimony in self-defense cases was inapplicable and defense counsel was not ineffective when he failed to provide notice of his intent to elicit such testimony. Under the facts in this case, the trial court did not abuse its discretion when it excluded battered woman syndrome testimony or when it allowed the State to present character evidence of the victim in its case in chief. This Court affirms the conviction and sentence entered against Duran.

LEHMAN, Chief Justice, dissenting.

I respectfully dissent. The majority holds that a theory of self-defense is unavailable to one who is charged with recklessly causing a result because "a charge of recklessness involves an unintentional act." This is not always the case, as Ms. Duran's dilemma illustrates. There is no question that Ms. Duran intended to dislodge "the victim" from the hood of the car. In fact, she intentionally slammed on her brakes to forcibly remove her attacker and allow her escape. She did not intend to hurt him, but she voluntarily chose to use whatever force was necessary. The question before the jury was whether that intention was a conscious disregard of "a substantial and ***unjustifiable*** risk" and her actions constituted "a gross deviation from the standard of conduct that a ***reasonable person*** would observe in the situation[.]" Wyo. Stat. Ann. § 6–1–104(a)(ix) (Michie Cum.Supp.1995).

I cannot distinguish this scenario from those in which we allow a criminal defendant to claim self-defense. Had Ms. Duran stated she intended to harm "the victim," and had the prosecutor decided to charge her with an intentional homicide, the jury could have considered the reasonableness of her actions in light of her subjective belief of imminent harm. Rather, because her state of mind is less culpable (or because the prosecutor charges her as such), the majority denies her an opportunity to demonstrate that, given her subjective belief, her intentional conduct was reasonable and the risk justifiable.

This case sadly personifies the fundamental unfairness caused by confusing "an unintentional act" with what really is an unintentional consequence. Here, Ms. Duran's actions were not unintentional; the victim's death was unintentional. *See Elliott v. Commonwealth*, 976 S.W.2d 416, 420–22 (Ky.1998) ("As applied to the facts of this case, the definitions of 'wantonly' and 'recklessly' address appellant's state of mind, not with respect to his act, but with respect to the result of his act."). To further illustrate the point, imagine the defendant is faced with a deadly assailant and, in response, the intended victim points and shoots a gun at the attacker's legs, meaning to incapacitate him. However, the defendant's lack of skill causes the bullet to enter the assailant's heart, instantly killing him. Should the prosecutor choose to charge him with manslaughter under Wyo. Stat. § 6–2–105(a)(ii), will we deny a claim of self-defense at trial? Under the majority holding, we do.